**\*E-FILED 1/30/09\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REGINALD BRONNER,<br><br>    Plaintiff,<br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA, et al.,<br><br>    Defendants.<br>_____/ | NO. C 03-5742 JF (RS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL** |

## I. INTRODUCTION

In this disability-benefits action under the Employee Retirement Income Security Act ("ERISA"), plaintiff Reginald Bronner moves to compel the production of documents from defendant Unum Life Insurance Company of America ("Unum"). In particular, Bronner requests that Unum respond to his third set of document requests consisting of numbers 1-4, 6, 8-10, 12, 14, 22, 24-27, and 32-34. Bronner further seeks: (1) a response to request for admission number seventeen asking Unum whether it regularly uses Dr. Lambrew as a cardiologist to review claims; and (2) the titles and job functions of Catherine Curtis, Jen Magic, Sally Seidl, and Doreen Riordan whose names were provided in a privilege log. Finally, Bronner seeks leave to propound additional

interrogatories and a document request. Unum opposes the motion.[1] For the reasons stated below, the motion to compel will be granted in part and denied in part.

## II. PROCEDURAL HISTORY

Bronner makes this motion against the backdrop of a protracted case history. After Unum filed a summary judgment motion in 2005, Bronner elected to participate in Unum's multistate reassessment process under the Regulatory Settlement Agreement ("RSA") and its California counterpart, the California Settlement Agreement ("CSA"). The RSA and CSA are voluntary administrative review processes involving claims that had been denied during a specified period as part of a settlement between Unum and the Department of Labor as well as the California Department of Insurance.

As a result of the RSA and CSA, the action was stayed for the pendency of the reassessment process. Shortly thereafter, Unum insists it timely sent Bronner the required forms for his participation in the reassessment process. Bronner eventually submitted those forms, but did so after the sixty day deadline had elapsed. Relying on the terms of the RSA and CSA, Unum rejected Bronner's materials as untimely, and the stay was lifted by the presiding judge on May 23, 2007.

In September 2007, Unum filed a motion for summary judgment before the presiding judge, which was heard on November 9, 2007. Prior to the hearing date Bronner served his first and second set of document requests on Unum to obtain his claim handling history as well as claim histories pertaining to others. Bronner contends that the information is necessary to determine the effect of any conflict of interest at Unum on the adjudication of his claim. A "structural conflict of interest" arises where the entity paying the claim also makes the coverage decision, thereby creating a potential bias that could have influenced any benefits denial. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006). On October 5, 2007, Bronner filed his opposition to summary judgment which included the request for "conflict of interest" discovery.

---

[1] Unum submitted objections to various portions of the Wailes declaration. Those objections are sustained as the passages identified either lack personal knowledge and foundation, are hearsay and argumentative, or fail under the best evidence rule.

2

On July 1, 2008, the presiding judge issued his order deferring determination of the summary judgment motion and granting limited discovery. In particular, the presiding judge permitted focused discovery on: (1) the circumstances under which Unum denied Bronner's appeal; (2) the circumstances surrounding Unum's response to Bronner's request for reassessment following the settlement agreement; and (3) the findings, if any, of the multistate investigation with respect to Unum's alleged structural conflicts of interest. The order further required each party to file a supplemental brief in ninety days addressing the implications of any discovery on the pending motion for summary judgment.

On July 21, 2008, Bronner propounded the discovery requests at issue. To the extent Bronner sought information about any party other than himself, and on any topic not specifically enumerated in the July 1, 2008 Order, Unum refused to produce documents. Unum subsequently filed its supplemental brief on September 29, 2008, but Bronner failed to file by the deadline. Bronner waited until mid-October to file an application for an extension of time to submit his supplemental brief. On November 18, 2008, the presiding judge granted Bronner an additional ninety days to resolve the discovery dispute before this Court. Bronner waited sixteen days to file the current motion to compel on December 4, 2008. The new deadline for Bronner to file his supplemental brief is February 16, 2009.

### III.  LEGAL STANDARD

Under Fed. R. Civ. P. 26(b)(1), parties may obtain discovery of any nonprivileged matter that is relevant to any party's claims or defenses, or "for good cause," discovery of any matter relevant to the subject matter involved in the action. Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*.

### IV.  DISCUSSION

Since the presiding judge heard the summary judgment motion, but before his July 1, 2008 Order, the Supreme Court decided a major case in the ERISA realm: *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008). The presiding judge noted in his July 1, 2008 Order, that the outcome of the summary judgment motion may well turn on the standard of review to be applied to

1  the administrator's decision.[2]  In that order, he represented that he could not resolve the parties'
2  disagreement as to the appropriate standard without additional information.  The presiding judge
3  then specifically permitted the development of the record in the three delineated areas and referred
4  any disputes to this Court along with the direction that the requests be considered in light of the
5  Supreme Court's decision in *Glenn*.

6  A.      *Abatie* and *Glenn*

7       In *Abatie*, the court held that a conflict of interest must be weighed as a factor in abuse of
8  discretion review on a case-by-case basis, informed by the nature, extent, and effect of the conflict
9  on the decision-making process.  458 F.3d at 967.  The Ninth Circuit further concluded that a district
10 court could, in its discretion, consider extrinsic evidence in evaluating the conflict's effects.  *Id*. at
11 970.  For instance, where there is evidence that an administrator repeatedly denies benefits to
12 participants by interpreting plan terms incorrectly or by making decisions against the weight of
13 evidence in the record, then a court can weigh a conflict more heavily.  *Id*. at 968-69.

14      Two years later the Supreme Court in *Glenn* appeared to embrace the *Abatie* approach,
15 holding that a conflict of interest "should prove more important (perhaps of great importance) where
16 circumstances suggest a higher likelihood that it affected the benefits decision, including, but not
17 limited to, cases where an insurance company administrator has a history of biased claims
18 administration."  128 S. Ct. at 2351.  The Court also held that a district court could consider
19 evidence of an administrator's actions taken in an effort "to reduce potential bias and to promote
20 accuracy," such as "walling off claims administrators from those interested in firm finances," or
21 "imposing management checks that penalize inaccurate decisionmaking irrespective of whom the
22 inaccuracy benefits."  *Id*.  The Court noted that in such circumstances, the weight of a conflict might
23 be reduced to "the vanishing point."  *Id*.

---

[2] The Supreme Court has held that a denial of benefits is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Burke v. Pitney Bowes, Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1023 (9th Cir. 2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  In contrast, when a plan unambiguously gives the plan administrator discretion to determine eligibility or to construe the plan's terms, a deferential abuse of discretion standard is applicable. *Id*. at 1023-24.

4

Indeed, since *Glenn* was decided, the Ninth Circuit has confirmed the continued viability of the approach under *Abatie*. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 633 (9th Cir. 2008). That is, taken together, *Glenn* and *Abatie* require a district court to consider the conflict of interest as a factor whose weight depends on the "nature, extent, and effect" of the conflict on the decision-making process, which may be unmasked through discovery. *Santos v. Quebecor World Long Term Disability Plan*, No. 1:08-cv-00565 AWI GSA, 2009 WL 111910, at *2 (E.D. Cal. Jan. 16, 2009) (citing *Abatie*, 458 F.3d at 967, 970).

Under this framework, Bronner maintains that in light of the July 1, 2008 Order, and the decision in *Glenn*, he is entitled to the discovery identified above. Bronner argues that *Abatie* and *Glenn* clarified that the evidence of an insurer's conflict of interest is relevant in every case, and must be weighed in determining whether the insurer abused its discretion. Bronner believes that under both cases a defendant's past claim handling practices with respect to others besides himself are relevant to determine Unum's actual conflict of interest in denying his individual claim. Said another way, Bronner maintains that he cannot determine how Unum's alleged conflict of interest affected his benefits decision if he does not obtain the discovery beyond what was done with his claim.

B.   Discovery in ERISA Actions

Extensive discovery is diametrically opposite to ERISA's goal of resolving disputes over benefits inexpensively and expeditiously. *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005). The presiding judge, however, cannot fully evaluate the nature and effect of a structural conflict of interest without considering at least some evidence regarding that conflict.

While Bronner's basic premise, that *Glenn* reiterates the relevance of an administrator's general claims history record in assessing the conflict of interest issue in each individual ERISA action is undisputed, that principle does answer whether or not the discovery he seeks should go forward. Particularly in light of the importance of efficient review in ERISA actions as noted above, the Court must evaluate if the discovery requests are sufficiently focused in relation to the claims history issue. In other words, while *Abatie* and *Glenn* identify relevant factors for lower court

5

review, neither of those decisions address the proper scope and breadth of discovery to be permitted in a particular case. *Burke*, 544 F.3d at 1028 n.15 (reiterating that whether to permit discovery into the "nature, extent, and effect" of a plan's structural conflict of interest is within a district court's discretion).

C.  Discovery Requests

As noted above, in his July 1, 2008 Order, the presiding judge set out three areas of additional discovery Bronner would be permitted to pursue. In addition, Bronner argues that in light of *Glenn* he should be offered the opportunity to obtain claim histories for other individuals whose benefits determination turned on similar medical conditions and courses of therapy. As set forth below, to the extent Bronner's requests go to the categories delineated in the presiding judge's July 1, 2008 Order, the motion to compel will be granted. To the extent that the requests seek case-specific records of claims pertaining to other individuals, the motion to compel will be denied. Finally, Bronner's request for statistical information relative to Unum's claim history will be granted in part and denied in part.

1.  Categories One & Two

Bronner's document request numbers twenty-two (statistics of reassessments Unum terminated because the beneficiary failed to respond), twenty-four (appeals process Unum set up for reassessment), twenty-five (procedure for requesting an extension of time in reassessment), twenty-six (procedure for handling calls to a phone number provided for Unum's reassessment), and twenty-seven (the address that Unum used for the reassessment of Bronner's case) go directly to the presiding judge's first two categories relating to Bronner's appeal and Unum's response to Bronner's request for reassessment. Those requests, therefore, are granted.

2.  Category Three

Because *Glenn* is entirely consistent with the previously governing framework for ERISA cases set forth in *Abatie*, and in that the presiding judge considered *Abatie* in determining what focused discovery would be permitted, Bronner is not entitled to the broad request for detailed records pertaining to others. The third category of the July 1, 2008 Order addresses findings of the multistate investigation, which presumably go to the record of Unum's claims history.

6

Bronner's discovery requests that attempt to reach detailed records pertaining to other claimants (e.g. request for production numbers one and two seeking all records for claims denied on the ground of aspirin therapy for heart attack patients) are simply too broad and burdensome when weighed against the material needed to probe the relevant general area of Unum's claims history. *See Groom v. Standard Ins. Co.*, 492 F. Supp. 2d 1202, 1205 (C.D. Cal. 2007) (determining that conflict of interest discovery "must be narrowly tailored and cannot be a fishing expedition"). Accordingly, request numbers 1-4, 6, 8, and 33 are denied.

Bronner's remaining discovery requests seek various statistics. Requests for statistics regarding other claims may be appropriate for purposes of the conflict of interest analysis. *See Walker v. Metroplitan Life Ins. Co.*, 585 F. Supp. 2d 1167, 1176 (N.D. Cal. 2008). Indeed in the recent *Walker* decision from this district, the court ordered that the defendant administrator produce statistics regarding the number of claims it had rejected or denied after review by one of its chosen physicians over a two year period in order to assess whether or not a conflict of interest impacted the administrator's decisionmaking process. *Id*.

In line with *Walker*, Bronner's discovery request numbers nine and ten are granted because statistics regarding heart attack claims will allow him to weigh the effect of any alleged conflict of interest in his individual case. Unum provided declarations indicating that because it does not keep the information in the statistical form requested, and in light of the open-ended time parameters of the requests, it would be unduly burdensome to compile the material and produce it. While Unum's concerns are entitled to be weighed in the balance, it would seem that the statistics requested should be exchanged but with an appropriate time parameter imposed: here between January 1, 2001, and January 1, 2004.

Discovery request numbers 12, 14, 32, and 34, by contrast, are denied as they are much more expansive, encompassing a host of individual claimant's records with particular medical conditions and treatment histories. Request number thirty-two, for example, seeks all documents (including statistics) concerning claims reviewed by a doctor from 1997 through to the present. Seeking all documents from a physician over a ten year period is hardly tailored to Bronner's conflict of interest

7

analysis. Similarly for the other requests, to grant such discovery would run the risk of turning every ERISA case into an expensive and burdensome battle.

Of course, Bronner may conduct discovery pursuant to these requests based on the presiding judge's third category of narrowly permitted discovery. This includes not only the final results of the multistate investigation, but also the documents that led to those findings to the extent they are responsive to Bronner's discovery requests. Unum shall also produce any evidence outside the administrative record that it intends to use in showing that the structural conflict did not impact its decision in this case.

## V. CONCLUSION

Bronner's motion to compel is granted in part and denied in part as described above. Unum shall also respond to Bronner's request for the titles and job functions of Catherine Curtis, Jen Magic, Sally Seidl, and Doreen Riordan whose names were identified in a privilege log. The request for admission seventeen is denied as it seeks information not related solely to Bronner's claim. The remaining request for leave to propound additional interrogatories and a document request are denied as untimely.

In consultation with the presiding judge, the summary judgment hearing date of February 16, 2009, is vacated. The parties shall contact the presiding judge's chambers to schedule a new date in light of this order. Unum shall produce materials responsive to the permitted document requests, within twenty days of the date of this order.

IT IS SO ORDERED.

Dated: January 30, 2009

RICHARD SEEBORG
United States Magistrate Judge

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL
C 03-5742 JF (RS)

8

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Laura E. Fannon     laura.fannon@wilsonelser.com

W. George Wailes     gwailes@carr-mcclellan.com, gllewellyn@carr-mcclellan.com, jburns@carr-mcclellan.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 1/30/09**                                       **Richard W. Wieking, Clerk**

                                                                     **By:**       **Chambers**

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL
C 03-5742 JF (RS)